## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- :
In re:                                       :   Chapter 11

                                          :

MACKEYSER HOLDINGS, LLC, et al.,     :   Case No. 14-11550 (CSS)

                                          :

               Debtors.[1]              :   Jointly Administered
---------------------------------------------------------- :   **Hearing Date: July 16, 2014 at 9:30 a.m. (ET)**
                                             **Objection Deadline: July 9, 2014 at 4:00 p.m. (ET)**

### DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363 AND 554(a) AND BANKRUPTCY RULE 2002 AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OR ABANDONMENT OF DE MINIMIS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order pursuant to sections 105(a), 363 and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving procedures for the sale and abandonment of certain non-core, obsolete or burdensome assets of the Debtors (the "De Minimis Assets"), free and clear of liens, claims, interests and encumbrances. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: MacKeyser Holdings, LLC (5620); American Optical Services, Inc. (5707); Exela Hearing Services, LLC (6175); Optical Management Systems, Inc. (8300); Riverfront Hearing, Inc. (9220); AOS-OMS, LLC (4445); American Optical Services, LLC (4879); EHS-Riverfront, LLC (4530); 926 N. Wilcrest, LLC (2497); Epic Management Group, LLC (3385); Eyeglasses Etc., Inc. (7753); Eyes On You Eyecare, Inc. (2091); Genesis Billing Systems, LLC (1548); Genesis Eye Center, PLLC (8427); J. Richard Susi, D.O., P.A. (1936); Joseph D. Udvari, Jr., O.D., P.C. (0856); Joseph Kurstin, M.D., P.A. (7339); Lakewood Eye Clinic, P.C. (2251); Larry R. Moorman, M.D., P.C. (5458); Philip H. Clark, O.D., P.A. (6411); Steven T. Olkowski, M.D., P.C. (1813); Thomas Retinal Eye Specialists, P.C. (0492); Thomas G. Abell, M.D., P.S.C. (1810). The corporate headquarters and the mailing address for each entity listed above is 8076 West Sahara Avenue, Las Vegas, NV 89117.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363 and 554(a) and Bankruptcy Rule 2002.

## BACKGROUND

3.      On June 20, 2014 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Declaration of Thomas J. Allison in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 11] (the "Allison Declaration").

4.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

## RELIEF REQUESTED

5.      By this Motion, the Debtors seek entry of an order pursuant to Bankruptcy Code sections 105(a), 363 and 554(a) and Bankruptcy Rule 2002 authorizing and approving the implementation of procedures by which the Debtors may: (a) effectuate the sale of the De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price equal to or less than $750,000, free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens"), with such Liens attaching to the proceeds with the same validity, extent and priority as had attached to the De Minimis Assets

immediately prior to the sale, pursuant to the De Minimis Asset Sale Procedures (as described below); (b) effectuate the sale of De Minimis Assets with a sale price equal to or less than $5,000, free and clear of Liens, with such Liens attaching to the proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to the sale, without following the notice procedures required under the De Minimis Asset Sale Procedures or otherwise providing further notice or seeking further Court approval; (c) abandon De Minimis Assets to the extent that the Debtors determine that a sale thereof cannot be consummated at a price greater than the cost of liquidating such De Minimis Assets; and (d) pay any necessary fees and expenses incurred in the sale or abandonment of De Minimis Assets, including, but not limited to, commission fees to agents, brokers, auctioneers and liquidators, with the amount of proposed commission fees to be paid to be disclosed in the Sale Notice (as defined herein).

## BASIS FOR RELIEF

6.     Currently, the Debtors possess certain assets that: (i) are no longer required for the operation of their businesses; (ii) the Debtors' physician practice closures have rendered obsolete, excessive or burdensome; or (iii) the Debtors have determined, after evaluating holding and maintenance costs, are of marginal or no value to the Debtors' estates.  In the exercise of their sound business judgment, the Debtors have determined that the prompt sale of De Minimis Assets without the need for further Court approval is in the best interests of their estates and creditors because it will maximize recoveries by reducing administrative expenses in connection therewith and conserve the resources of both this Court and the Debtors by avoiding the need for serial motions to approve sales which fall below a certain value threshold. Accordingly, by this Motion, the Debtors seek approval of the procedures described herein (the "De Minimis Asset Sale Procedures") to complete the sale of De Minimis Assets on an expedited

3

basis without the need for obtaining further Court approval, so long as the transaction and notice

thereof fall within the parameters described below.

       7.    Additionally, to the extent the De Minimis Assets cannot be sold at a price

greater than the cost of liquidating such assets, the Debtors seek authority to abandon such

De Minimis Assets in accordance with these procedures.

## THE DE MINIMIS ASSET SALE PROCEDURES

       8.    The Debtors propose to sell each of the De Minimis Assets for the highest

and best offer received, taking into consideration the exigencies and circumstances of each such

sale, pursuant to the following De Minimis Asset Sale Procedures:

a.    The De Minimis Asset Sale Procedures will apply only to the sales of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with an aggregate selling price equal to or less than $750,000.[2]

b.    The Debtors are authorized to consummate such transaction(s) without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such sales are in the best interests of the estates, subject to the procedures set forth herein.

c.    Any such transaction(s) will be free and clear of all Liens, if any, with the valid, perfected and unavoidable Liens of the Valid Lien Holders (as defined below) to attach to proceeds of the sales with the same validity, priority, force and effect such Liens had on the De Minimis Assets immediately prior to the sale, subject to the rights, claims, defenses and obligations, if any, of the Debtors and all interested parties with respect to any such asserted Liens.

d.    The Debtors will file and serve written notice of each proposed sale, in substantially the form attached to the proposed order as Exhibit A (a "Sale Notice"), via hand delivery, overnight mail or email to (i) counsel to the U.S. Trustee, J. Caleb Boggs Federal Building, 2nd Floor, 844 King Street, Wilmington, DE 19801, Attn: Benjamin Hackman, Esq. (benjamin.a.hackman@usdoj.gov); (ii) counsel to the DIP Lenders, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, 920 N.

---

[2] For purposes of these procedures, selling price shall refer to the Debtors' estimate of the net proceeds of any sale transaction.

King Street, Wilmington, DE 19801, Attn: Sarah E. Pierce, Esq. (sarah.pierce@skadden.com); (iii) counsel to any official committees appointed in these Chapter 11 Cases; (iv) any known affected parties holding or asserting a Lien on or other interest in the De Minimis Assets subject to sale; and (v) if the aggregate selling price of the De Minimis Assets to be sold exceeds $500,000, any parties identified by the Debtors' investment bankers as having a possible interest in acquisition of the De Minimis Assets to be sold (collectively, the "Notice Parties").

e.      The content of the Sale Notice will consist of (i) identification of the De Minimis Assets being sold, (ii) identification of any party holding a Lien that the Debtors' presently believe will attach to the proceeds of the proposed sale (each, a "Valid Lien Holder")[3], (iii) identification of the purchaser of the assets and any relationship of the party or parties to the Debtors, (iv) the purchase price, (v) the significant terms of the sale agreement, including, but not limited to, any payments to be made by the Debtors on account of commission fees to agents, brokers, auctioneers and liquidators, and (vi) instructions consistent with the terms described below regarding the procedures to assert objections to the proposed sale.

f.      Notice Parties will have until 5:00 p.m. (Eastern) on the tenth (10th) day after the date of service of the Sale Notice (the "Notice Period") (i) to object to the proposed sale, including to the Debtors' identification of Valid Lien Holders (and the amounts of their Liens, if provided), and (ii) if the aggregate selling price of the De Minimis Assets to be sold exceeds $500,000, to submit a higher offer for such De Minimis Assets (an "Overbid"). If no written objection or Overbid (if applicable) from any Notice Party is received prior to the expiration of the Notice Period, then the applicable Debtor is authorized, without further notice and without further Court approval, to immediately consummate the proposed sale in accordance with the terms of the underlying contract(s) or other document(s), and to use the cash proceeds of such sale subject only to the rights of Valid Lien Holders. Upon the expiration of the Notice Period without the receipt of any objection or Overbid (if applicable), the proposed sale will be deemed final and fully authorized by the Court; provided, however, that the Debtors may submit a proposed form of order to the Court under certification of counsel if requested by the purchaser or otherwise desirable.

g.      Any Overbid (if applicable) or objection to a proposed sale must be filed and served on (i) the Notice Parties, (ii) the Debtors, MacKeyser Holdings, LLC, 8076 West Sahara Avenue, Las Vegas, NV 89117, Attn: Cathryn Kennedy, and (iii) Debtors' counsel, Cole, Schotz, Meisel, Forman &

---

[3] The Debtors are continuing to review and analyze the liens asserted against the Debtors' assets and reserve their rights to later contest such liens on all grounds.

Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: David R. Hurst, Esq. (dhurst@coleschotz.com) (collectively, the "Objection Parties"), so as to be received by the Objection Parties prior to the expiration of the Notice Period. Each objection must state with specificity the grounds for the objection; and each Overbid must state the cash offering price for such De Minimis Assets, the material terms of the Overbid and a statement that such Overbid is made with no conditionality (or no more conditionality than the underlying bid, as applicable). If an objection to the proposed transaction is properly filed and served, then the relevant De Minimis Asset will only be sold upon (i) written withdrawal of the objection, (ii) entry of an order of the Court specifically approving the proposed sale, or (iii) submission of a consensual form of order resolving the objection as between the Debtors and the objecting party. If no resolution to the objection is reached, the Debtors will schedule a hearing to consider the objection to the proposed transaction. Alternatively, if an Overbid is properly filed and served, then the Debtors' investment bankers will hold an auction between the parties submitting competing bids, and the Debtors will consummate the proposed sale to the party ultimately submitting the highest cash bid for the De Minimis Assets.

h.      Commencing August 31, 2014, and every month thereafter, the Debtors will file a report with the Court listing all assets sold pursuant to the De Minimis Asset Sale Procedures for the preceding month, including the names of the purchasing parties and the types and amounts of the sales. The Debtors' obligation to file such reports will terminate thirty (30) days after confirmation of a plan.

9.      Notwithstanding the Notice Procedures described above, for any sale of De Minimis Assets with a sale price equal to or less than $5,000 (a "Miscellaneous Sale"), the Debtors will be authorized, without following the notice procedures required under the De Minimis Asset Sale Procedures or otherwise providing further notice or seeking further Court approval, to consummate the Miscellaneous Sale, and such sale will be deemed final and fully authorized by the Court. Any such transaction(s) will be free and clear of all Liens, with such Liens attaching only to the sale proceeds with the same validity, extent and priority as had attached to the De Minimis Assets immediately prior to such sale.

10.      To the extent such De Minimis Assets cannot be sold at a price greater than the cost of liquidating such assets, the Debtors seek authority to abandon such De Minimis

Assets in accordance with the following procedures (the "De Minimis Asset Abandonment

Procedures" and, together with the De Minimis Asset Sale Procedures, the "Procedures").

a.    The Debtors will file and serve written notice of the abandonment, in substantially the form attached the proposed order as Exhibit B (the "Abandonment Notice"), to the Notice Parties.

b.    The Abandonment Notice will contain (i) a reasonably detailed description of the De Minimis Assets to be abandoned; (ii) a list of all parties that the Debtors presently believe hold valid, perfected and unavoidable liens on the De Minimis Assets to be abandoned; (iii) the reasons for such abandonment, and (iv) any payments to be made by the applicable Debtor in connection with such abandonment.

c.    Notice Parties will have until 5:00 p.m. (Eastern) on the tenth (10th) day after the date of service of the Abandonment Notice to file and serve on the Objection Parties a written objection to the proposed abandonment. If no written objection from any Notice Party is received, then the applicable Debtor is authorized to immediately proceed with the abandonment.

d.    If a written objection to the Abandonment Notice is timely received from any Notice Party, then the relevant De Minimis Assets will only be abandoned upon either the consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing.

## APPLICABLE AUTHORITY

**A.    The De Minimis Asset Sale Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code**

11.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee,

after notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

property of the estate ...." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code

does not specify a standard for determining when it is appropriate for a court to authorize the use,

sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's

assets if such sale is based upon the sound business judgment of the debtor. See, e.g., Myers v.

Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp.,

242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del.

1991); <u>In re Trans World Airlines, Inc.</u>, No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr.

D. Del. Apr. 2, 2001).

           12.     The Debtors currently possess certain De Minimis Assets that they want to

sell because such assets are no longer necessary for operating the Debtors' business and, in some

cases, create administrative obligations that are burdensome to the estates.  To that end, the

Debtors have proposed the Procedures whereby the Debtors can sell or abandon De Minimis

Assets during the pendency of the Chapter 11 Cases.  If the requested relief is granted, the

Debtors will be able to avoid unnecessary costs associated with operating, storing, maintaining

and liquidating De Minimis Assets that are unnecessary to the operation of the Debtors' business

on a going forward basis.  Moreover, the proposed Procedures provide the Debtors with

necessary flexibility during the Chapter 11 Cases, and thus are in the best interests of the

Debtors' estates and creditors.  Further, the proposed Procedures afford parties in interest and

any known affected creditor asserting a Lien on the De Minimis Assets the opportunity to object

and obtain a hearing, if necessary.

**B.**      **Shortened Notice of the Proposed Sale of De Minimis Assets is Appropriate**

           13.     The notice and hearing requirements contained in section 363(b)(1) of the

Bankruptcy Code are satisfied if appropriate notice and an opportunity for hearing are given in

light of the particular circumstances.  <u>See</u> 11 U.S.C. § 102(1)(A) (defining "after notice and a

hearing" to mean such notice and an opportunity for hearing "as is appropriate in the particular

circumstances ...").  Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a

minimum of twenty-one (21) days' notice of proposed sales of property outside the ordinary

course of business be provided by mail to "the debtor, the trustee, all creditors and indenture

trustees" and any committee appointed under section 1102 of the Bankruptcy Code.

14.     Courts are authorized to shorten the twenty-one-day notice period generally applicable to asset sales, or direct another method of giving notice, upon a showing of "cause." See Fed. R. Bankr. P. 2002(a)(2). The usual process of obtaining court approval of each sale of De Minimis Assets (a) would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying the sale transactions; and (b) in some instances, may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time. The Debtors, therefore, propose to streamline the process and shorten the applicable notice periods as described herein to maximize the net value realized from sales of De Minimis Assets.

**C.     The De Minimis Asset Sale Procedures Are Appropriate Under Section 363(f) of the Bankruptcy Code**

15.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

16.     The Debtors propose to sell the De Minimis Assets in a commercially reasonable manner in an effort to obtain the highest consideration for such assets, and expect that the value of the proceeds from such sales will fairly reflect the value of the property sold. The Debtors further propose that any party with a valid, perfected and unavoidable Lien on a De Minimis Asset sold pursuant to this Motion will have a corresponding security interest in the proceeds of such sale. Moreover, the Debtors propose that the failure to object to the entry of the order approving this Motion along with the failure to file a timely objection to a Sale Notice

where applicable will be deemed "consent" to any sale pursuant to the order within the meaning

of section 363(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the

Bankruptcy Code would be satisfied for any proposed sales free and clear of liens, claims,

interests and encumbrances.

**D.      Sales of De Minimis Assets Will be Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

              17.      Section 363(m) of the Bankruptcy Code provides in relevant part that the

reversal or modification on appeal of an authorization under subsection (b) or (c) of that section

of a sale or lease of property does not affect the validity of a sale or lease under such

authorization to an entity that purchased or leased such property in good faith, whether or not

such entity knew of the pendency of the appeal, unless such authorization and such sale or lease

were stayed pending appeal.  <u>See</u> 11 U.S.C. § 363(m).  While the Bankruptcy Code does not

define "good faith," the Third Circuit in <u>In re Abbotts Dairies of Pennsylvania, Inc.</u>, provided

that:

> The requirement that a purchaser act in good faith . . . speaks to the
> integrity of [the purchaser's] conduct in the course of the sale
> proceedings.  Typically, the misconduct that would destroy a
> purchaser's good faith status at a judicial sale involves fraud,
> collusion between the purchaser and other bidders or the trustee, or
> an attempt to take grossly unfair advantage of other bidders.

788 F.2d 143, 147 (3rd Cir. 1986) (emphasis omitted) (quoting <u>In re Rock Indus. Mach. Corp.</u>,

572 F.2d 1195, 1998 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section

363(m))).  The Debtors expect that any agreement that results in the sale of De Minimis Assets

will be an arm's-length transaction entitled to the protections of section 363(m), and the Debtors

ask that section 363(m) be deemed to apply to each sale of De Minimis Assets in accordance

with the De Minimis Asset Sale Procedures.

E.    **The De Minimis Asset Abandonment Procedures Are Appropriate Under Section 554(a) of the Bankruptcy Code**

18.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  The Debtors will take reasonable steps to sell De Minimis Assets not needed in their operations.  The costs associated with sales of certain De Minimis Assets, however, may exceed any possible proceeds thereof.  The inability to consummate a commercially reasonable sale of De Minimis Assets would indicate that such assets have no meaningful monetary value to the Debtors' estates. Further, the costs of storing and maintaining such De Minimis Assets may burden the Debtors' estates and weigh in favor of abandoning such assets.  Accordingly, the Debtors contend that, in such circumstances, the abandonment of De Minimis Assets pursuant to the De Minimis Asset Abandonment Procedures is in the best interests of the Debtors' estates.

19.    In light of the demonstrable benefits of streamlined procedures to sell or abandon De Minimis Assets, courts in this and other districts have approved similar procedures in other chapter 11 cases.  See, e.g., In re Savient Pharmaceuticals, Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Dec. 13, 2013) (approving *de minimis* asset sale and abandonment procedures); In re Solyndra LLC, Case No. 11-12799 (MFW) (Bankr. D. Del. Oct. 17, 2011) (approving *de minimis* asset sale procedures for sales equal to or less than $1,000,000 and abandonment procedures); In re Friendly Ice Cream Corporation, Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (approving asset sale procedures for sales of up to $500,000 and abandonment procedures); In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. July 16, 2009) (approving asset sale procedures for sales of up to $10,000,000 and abandonment procedures); In re Flying J, Inc., Case No. 08-13384 (MFW) (Bankr. D. Del. Feb. 19, 2009)

(approving asset sale procedures for sales of up to $5,000,000 and abandonment procedures); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Apr. 25, 2007) (approving asset sales of up to $2,500,000 and abandonment procedures).  For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates and creditors.

### NOTICE

20.    Notice of this Motion will be given to: (i) the U.S. Trustee; (ii) counsel to the DIP lenders; (iii) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (iv) any known parties holding or asserting a Lien on or other interest in the Debtors' assets; and (v) all parties entitled to notice pursuant to Local Rule 2002-1.  The Debtors submit that, under the circumstances, no other or further notice is required.

### NO PRIOR REQUEST

21.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, for the reasons stated herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       June 27, 2014

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**


/s/ David R. Hurst
David R. Hurst (I.D. No. 3743)
Marion M. Quirk (I.D. No. 4136)
Therese A. Scheuer (I.D. No. 5166)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117


*Proposed Counsel for Debtors and*
*Debtors in Possession*